IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE ROTH and KELLY KOZEMCZAK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 3:23-CV-1380-MAB |
| ) | |
| NFL NATIONAL FREIGHT, LTD, and ) | |
| GURSIMRAN SINGH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiffs' motion to authorize alternative methods of service (Doc. 30) and Plaintiffs' motion to shorten time and notice of hearing (Doc. 31). For the reasons set for below, Plaintiffs' motion to authorize alternative methods of service (Doc. 30) is DENIED and Plaintiffs' motion to shorten time and notice of hearing (Doc. 31) is DENIED as MOOT.

### BACKGROUND

Plaintiffs Joe Roth and Kelly Kozemczak filed this action in state court on behalf of the estate of Jamie Roth. As alleged in Plaintiffs' complaint, on March 18, 2021, Defendant Gursimran Singh was driving a tractor-trailer eastbound on I-70 in Madison County, Illinois, on behalf of Defendant NFL National Freight LTD (Doc. 1-1). Singh failed to notice or slow down when Jamie Roth's vehicle stopped ahead of him (*Id.* at pp. 2-3). Singh's tractor-trailer rear-ended Jamie Roth's vehicle, resulting in her death (*Id.* at p. 4).

NFL National Freight removed this action to federal court based upon diversity jurisdiction on April 26, 2023 (Doc. 1). Notably, while NFL National Freight waived service, Singh had not been successfully served (*see* Docs. 1-4; 8; 9). Additionally, Singh no longer worked for NFL National Freight (Doc. 1-4). Thereafter, a summons was issued to Singh at the Canadian address he listed on the police report from the crash (Doc. 9; Doc 30, p. 3). As displayed by the affidavit of attempted service, a process server visited the address listed on the summons to effectuate service on Singh (Doc. 33). However, the process server was unable to do so and learned that Singh moved (*Id.* at p. 4). The process server then spoke with Singh's former landlord, who did not have an updated address for him but did share what was believed to be his cellphone number (*Id.*).

The process server called the number and ultimately received a text message response (*Id.*). Thereafter, when the process server asked for an updated address to deliver a package to Singh, the cellphone number responded, "I moved to Ontario." (*Id.* at p. 6). No further response from the cellphone number appears to have occurred (*Id.*).

Based upon the failed service attempt at the address Singh listed in the police report and the process server's investigation, Plaintiffs filed the instant motion to serve Singh electronically via the cellphone number believed to belong to him (Doc. 30). Specifically, Plaintiffs seek to compile the service documents in a cloud file sharing service, so they can serve Singh by sending him a link to the documents through text message (*Id.*).

## DISCUSSION

Plaintiffs argue they should be permitted to serve Singh via text message since their attempts to serve him by more traditional means have failed (Doc. 30). However, for the reasons discussed herein, the Court is not persuaded that the proposed method of service is reasonably calculated to apprise Singh of this action.

Federal Rule of Civil Procedure 4(f) dictates how service may be effectuated upon an individual in a foreign country. The subsection of Rule 4(f) relevant to this Order, Rule 4(f)(3), provides that "an individual … may be served at a place not within any judicial district of the United States: … (3) by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3). Nonetheless:

> Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process. To meet this requirement, the method of service crafted by the district court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016-17 (9th Cir. 2002); (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). In other words, a court must conduct a case specific inquiry to determine whether the proposed means of service is acceptable given the facts of the case before it. *Rio Properties*, 284 F.3d at 1017.

For instance, in *Rio Properties*, the Ninth Circuit addressed a similar issue related to whether service of process by email on a foreign defendant satisfied due process. *Id.* There, the plaintiff had unsuccessfully attempted to serve the defendant by more traditional means before receiving court approval to serve the defendant by email. *Id.* at

1016. In reviewing the permissibility of email service, the Ninth Circuit found service by email to be acceptable because it was the most likely method of service to reach the defendant given the facts of the case. *Id.* at 1017. The court emphasized that the defendant did not have an office or a door and had structured its business in such a way that it could only be contacted by email. *Id.* at 1018. However, in concluding that email service was appropriate given the facts of the case, the court warned of the limitations of email service of process and stated that district courts should "balance the limitations of email service against its benefits in any particular case." *Id.*

In the few cases that have addressed service of process by text message, courts have expressed concern over permitting service solely by text message. *See Marvici v. Roche Facilities Maintenance LLC*, 2021 WL 5323748, at *4 (S.D.N.Y. 2021). For example, in *Marvici*, the Court was tasked with determining whether it was permissible to authorize service by text message under Rule 4(f)(3). *Id.* Pertinently, in finding service by text message was acceptable in that case, the court emphasized that the text message service was just one part of a multi-prong approach to service. *Id.* In addition to also sending service by certified mail, the Court found text message service to be reasonably likely to apprise the defendant because: (1) there was evidence that the defendant already knew of the lawsuit; (2) the defendant had communicated with the plaintiff at the number in question; (3) there was no reason to believe the defendant no longer used the number; and (4) the text message service was to be followed up by a phone call to the number to confirm receipt of the message. *Id.* at 4-5. In contrast, the court explained that "if the plaintiffs were proposing to serve Roche *only* by means of a text message, as opposed to

using text messaging as a supplemental means of service, a substantial question would arise whether that service comports with due process." *Id.* at 4. *See also* Claire M. Specht, *Text Message Service of Process-No Lol Matter: Does Text Message Service of Process Comport with Due Process?*, 53 B.C. L. Rev. 1929 (2012) (discussing the benefits and limitations of text message service of process).

Here, having considered the proposed method of service in light of the specific facts of this case, the Court finds service of process via text message would not comport with constitutional notions of due process because it does not appear reasonably likely to apprise Singh of this action.[1] Notably, the instant motion only seeks to serve Singh electronically via text message. A multi-prong approach like that in *Marvici* was not proposed and as a result, Plaintiffs have not alleviated the Court's concerns.

For one, Plaintiffs have not adequately demonstrated that the cellphone number they have been contacting currently belongs to Singh. Even if the Court treated the process server's conversation with Singh's former landlord and text messages with Singh's presumed cellphone number as proof that the cellphone number belonged to him, this does not provide any evidence that Singh is still in possession of that number.

---

[1] As with service by email, it appears service by text message is not generally prohibited by the Hague Convention or any other applicable international agreement. *See Smith v. SMS Group, Inc.*, 2022 WL 15460279, at *2 (S.D. Ill. 2022) ("Moreover, service of process by email is not prohibited by the Hague Convention."); *see also Marvici v. Roche Facilities Maintenance LLC*, 2021 WL 5323748, at *3 (S.D.N.Y. 2021) (allowing service by text message as a supplemental means of service). However, the Court need not consider this issue further because of the Court's holding regarding due process concerns raised in this case. For similar reasons, the Court declines to address whether Plaintiffs have adequately demonstrated why alternative service should be authorized under Rule 4(f)(3). *See Smith*, 2022 WL 15460279, at *2 ("While the Seventh Circuit has not spoken directly on the steps Plaintiff must take prior to requesting alternative service under Rule 4(f), several district courts in this Circuit have required that a plaintiff first demonstrate why alternative service should be authorized under Rule 4(f)(3).").

Similarly, Plaintiffs have provided no method of ensuring that the message to Singh was received by the phone number in question. And even assuming the number in question received the message, Plaintiffs have provided no way of demonstrating that it would be Singh who opens and reviews the text message.

Perhaps even more significantly (again assuming Singh maintained the phone number in question and personally received and opened the text message), there is still no guarantee that he would click to open the link contained within the message. In fact, the Court believes that most cell-phone users know better than to click on links from an unknown sender. Indeed, one of the most common refrains that we see and hear about in our everyday lives in order to avoid being hacked or having your privacy compromised is to not clink on or open a link from an unknown/unverified sender. Additionally, were Singh to clink the link, the Court would still have to assume that his phone number was associated with a smartphone capable of downloading and viewing the documents.

Put simply, there are just too many variables and unanswered questions regarding the likelihood that text message service would apprise Singh in this specific case. Consequently, the Court does not find that Plaintiffs' motion is "reasonably calculated, under all the circumstances, to apprise" Singh. *Rio Properties*, 284 F.3d at 1016-17 (internal quotation marks and citation omitted). While there are certain additional steps that could be proposed in order alleviate some of the Court's concerns, the instant motion does not do so. *See, e.g.*, *Ross v. Dejarnetti*, No. CV 18-11277, 2019 WL 8301676, at *6 (E.D. La. Aug. 23, 2019) (permitting service by text message that was also accompanied by email service

and service via the defendant's website). For all of these reasons, the Plaintiffs' motion to authorize service via text message upon Singh is DENIED.

## CONCLUSION

Plaintiffs' motion to authorize alternative methods of service is **DENIED** (Doc. 30). Consequently, Plaintiffs' motion to shorten time and notice of hearing, which moved to discuss their motion to authorize alternative service at a prior court hearing, is **DENIED** as **MOOT** (Doc. 31).

**IT IS SO ORDERED.**

**DATED:  October 20, 2023**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**